IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02220-MEH

JAKE GITTER,

Plaintiff,

v.

UNIVERSITY OF NORTHERN COLORADO,
CARL IWASAKI, both individually and in his official capacity as Head Baseball Coach at the University of Northern Colorado, and
DARREN DUNN, in his official capacity as Director of Athletics at the University of Northern Colorado,

Defendants.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Defendants have filed a Motion to Dismiss Plaintiff's First Amended Complaint and Jury Demand (FAC), ECF 26, which is fully briefed. For the reasons described below, the Motion is granted.

## FACTUAL BACKGROUND

### I. Allegations

The First Amended Complaint and Jury Demand alleges Plaintiff was a 2017 "walk-on" member of the University of Northern Colorado (UNC) baseball team. Ultimately, he earned an athletic scholarship. He alleges he was scouted by professional baseball teams. He states that his coach, Defendant Carl Iwasaki, made derogatory statements to and about him because of his family's financial background. In his senior year, he had conflicts with a teammate. He was suspended for this occurrence. A week later he was called to a meeting by Defendant Iwasaki.

When he arrived at the meeting, only Assistant Athletic Director of Compliance Matt Boyd was there. Boyd demanded that Plaintiff sign a release and told Plaintiff he was being dismissed off the team. Plaintiff refused because Boyd did not provide a reason. Thirty minutes into the meeting Defendant Iwasaki arrived. He told Plaintiff it was his decision to dismiss Plaintiff from the team. Defendant Iwasaki reiterated Plaintiff's past conduct but acknowledged Plaintiff had "rectified his past misconduct by serving the previous punishments Coach Iwasaki had imposed." FAC ¶ 48.

Several times, Plaintiff requested an explanation for the dismissal, which Defendant Iwasaki at first refused to provide specifically, although Boyd and Defendant Iwasaki "acknowledged that the alleged basis for Mr. Gitter's removal from the Team were [sic] likely misquotes or misunderstandings." *Id.* at ¶ 53. As the meeting progressed, some explanations for the dismissal were provided. For example, Boyd explained, "You planted a seed in September. You made the comment, you've admitted to that comment. That comment planted a seed in a lot of people when they overhear other comments . . . Humans are fallible . . . The issue is that you planted the seed of that dissent and then it's just grown." *Id.* at ¶ 55. Boyd also cited Plaintiff walking out of practice, while Defendant Iwasaki cited an alleged incident concerning a female athlete at the school. Plaintiff alleges that these, by Boyd's and Defendant's own admissions, were false and unproven allegations. They did not permit Plaintiff to present his side of the story. Boyd explained: "You can dispute any of [these allegations], but I mean, they are literally just going to go into the file . . . It's just going to go into a file in athletics." *Id.* at ¶ 61.

Defendant UNC's student code of conduct stated:

> Before determining that a student-athlete has engaged in misconduct serious enough to warrant any of the sanctions described above, the director of athletics will notify the student-athlete of the misconduct under consideration and provide the student-athlete with the opportunity to meet with the Director of Athletics or designee to explain the circumstances and submit a written statement . . . The university has methods for appeals for all students . . . .

*Id.* at ¶ 62. Boyd gave Plaintiff no right of appeal.

Plaintiff also alleges that during the April 19, 2021 meeting, Defendant Iwasaki "threatened negative ramifications for" Plaintiff's baseball future if Plaintiff "question[ed] his dismissal." *Id.* at ¶ 67. Defendant Iwasaki stated that all inquiries regarding Plaintiff would be handled by Chad Hermansen, an assistant baseball coach at UNC. Therefore, Defendant Iwasaki texted Plaintiff that several inquiries from other schools were forwarded to Hermansen. When Plaintiff contacted Hermansen, the latter denied that he had spoken to anyone.

This series of events occurred at the end of Plaintiff's fourth year at UNC. Plaintiff anticipated being drafted by a major league baseball team, which did not happen. Moreover, no professional team pursued him thereafter.

## II. Claims for Relief

### A. First Claim for Relief

Plaintiff alleges that Defendants violated his procedural due process rights when they dismissed him from the baseball team. He states he was denied a meaningful opportunity to be heard and to defend himself before the dismissal decision was made. He alleges his "constitutionally protected property right" was a professional baseball contract.

### B. Second Claim for Relief

Plaintiff alleges that Defendants violated his procedural due process rights by violating the UNC Student Code of Conduct, which mandates the availability of an appeal when a student athlete is disciplined.

### C. Third Claim for Relief

Plaintiff alleges that Defendants violated his procedural due process rights by violating the UNC Student Code of Conduct by revoking his scholarship for 2021-22 (implied in the FAC is

that Plaintiff, despite four years at UNC, had one year eligibility remaining, presumably because he was redshirted in 2019) without a meaningful opportunity to be heard.

**D. Fourth Claim for Relief**

Plaintiff alleges that Defendants violated his substantive due process rights by permitting Defendant Iwasaki to make the sole and arbitrary decision to dismiss him from the team.

**E. Fifth Claim for Relief**

Plaintiff alleges Defendant Iwasaki tortiously interfered with a prospective business advantage by dismissing him from the team, disqualifying him from his final year of eligibility and preventing him from being drafted by a major league team. Plaintiff bases this allegation on Defendant Iwasaki permitting Plaintiff to play in only five games in his first year (2018), thereby burning a year of eligibility, then dismissing him from the team in 2021.

**F. Sixth Claim for Relief**

Plaintiff alleges Defendant Iwasaki intentionally inflicted emotional distress on Plaintiff by harassing, verbally abusing, and denigrating Plaintiff based on Plaintiff's family's background, and by threatening to interfere with Plaintiff's future baseball prospects.

In the FAC, Plaintiff seeks injunctive relief in the form of amending his baseball records to show he was not involuntarily dismissed from the team, damages, costs, and attorney's fees.

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Id.* at 1002-03 (citations omitted). The present Motion to Dismiss launches a facial attack on this Court's subject matter jurisdiction through its argument on sovereign immunity; therefore, the Court will accept the truthfulness of the FAC's factual allegations.

## II. Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that a plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, then the claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require a plaintiff to establish a *prima facie* case in a complaint, the elements of

each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action;" "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.*

## ANALYSIS

### I. Eleventh Amendment

Defendant UNC asserts Eleventh Amendment immunity from suit. It is clear that "states are protected by the Eleventh Amendment while municipalities are not." *Houston v. Reich*, 932 F.2d 883, 887 (10th Cir. 1991). "We have consistently held that state colleges and universities are arms of the state. . . . Therefore, the [University] enjoys Eleventh Amendment immunity as an instrumentality or 'arm' of the State of Colorado." *Sturdevant v. Paulsen*, 218 F.3d 1160, 1170–71 (10th Cir. 2000).

Plaintiff contends that he seeks the injunctive relief (changing his record of dismissal) against UNC. Thus, under *Ex Parte Young*, 209 U.S. 123 (1908), he may sue a state actor in his or her official capacity. *E.g., Odhuno v. Reed's Cove Health & Rehab.*, LLC, 355 F. Supp. 3d 1026,

1050 (D. Kan. 2018) ("[C]courts have uniformly recognized that injunctive relief in the form of a court order to expunge or remove files or false information falls within the scope of Ex parte Young.").

It is true a plaintiff may seek prospective injunctive relief from individual state actors in their official capacity (but not damages or declaratory relief) without running afoul of the Eleventh Amendment. *E.g.*, *Hunt v. Colorado Dep't of Corr.*, 271 F. App'x 778, 781 (10th Cir. 2008). However, the state itself is immune from suit regardless of the relief sought. *Puerto Rico Aqueduct v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Therefore, under Rule 12(b)(1), I dismiss all claims against UNC under the Eleventh Amendment. I also dismiss all official capacity claims against any individual Defendant except for the requested relief of changing Plaintiff's records.[1] It remains to be determined whether either of Defendant Iwasaki or Defendant Dunn has the actual authority to change such records.

## II. Colorado Governmental Immunity Act

### A. Notice Requirement

The Colorado Governmental Immunity Act (CGIA) permits certain claims to be brought against governmental actors. Colo. Rev. Stat § 24-10-118(1) if such acts were "willful and wanton." Although the CGIA waives sovereign immunity for claims based on such conditions or conduct, the notice requirements of the CGIA still apply. C.R.S. § 24–10–109(1)[2]; *Middleton v. Hartman*, 45 P.3d 721, 730–31 (Colo. 2002); *Colo. Dep't of Transp. v. Broun Group Retail, Inc.*,

---

[1] In his response brief, Plaintiff attempts to assert other forms of injunctive relief he seeks. He did not plead any others besides the records change. FAC at 15 (Prayer and Jury Demand).

[2] Under Section 109(1), "[a]ny person claiming to have suffered an injury by a public entity or by an employee thereof . . . shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury. . . ."

182 P.3d 687, 689 (Colo. 2008). *See Bethel v. United States*, 456 F. App'x 771, 775 n.11 (10th Cir. 2012) ("[The CGIA] requires, as a jurisdictional prerequisite, that any person seeking to sue a public employee, whether or not his actions are willful and wanton and whether or not he is being sued in his personal capacity, comply with its notice of claim provision."). Defendants allege that Plaintiff did not comply with the CGIA's notice requirements, because he did not serve the Colorado Attorney General (in addition to the University of Colorado Board of Trustees and UNC's general counsel) as required by the law. Plaintiff does address this argument in his response brief.

In the FAC, Plaintiff alleged: "On or about June 1, 2021, a Governmental Immunity Act Notice, attached and incorporated herein as **Exhibit 1**, was served on Defendants." FAC at ¶ 7 (emphasis in original). Exhibit 1 to the FAC is a June 21, 2021 certified letter from Plaintiff's attorneys to the UNC Board of Trustees and Dan Satriana, Vice President and General Counsel of UNC. I apply a Rule 12(b)(6) analysis to the notice requirements of the CGIA. *Scott v. Cary*, 829 F. App'x 334, 336 (10th Cir. 2020) (defects in the notice requirement are not jurisdictional but rather create a statutory defense, contrary to the *Bethel* case cited above).

I am concerned with Defendants' reliance on this argument. They cite *The Univ. of Colorado v. Booth*, 78 P.3d 1098, 1101 (Colo. 2003), but they do not present its dispositive holding on this issue: "Viewing the statute as a whole and the evident legislative purposes, we determine that a claimant against the University of Colorado may file her notice of claim, pursuant to section 24–10–109(3), with the Board of Regents as the governing body of the University ***or*** the Attorney General, who is statutory counsel to the Board of Regents." (Emphasis added). Plaintiff served notice on the Board of Regents. There is no good faith basis for this argument.

**B. No Waiver as to Tort Claims**

Plaintiff brings tort claims against Defendant Iwasaki for interference with a prospective business advantage and intentional infliction of emotional distress. The latter is certainly a proper tort claim, if sufficiently pleaded and noticed, to proceed under the CGIA. *E.g.*, *Handy v. City of Sheridan*, No. 12-cv-01015-WYD-KMT, 2013 WL 1232211, at *5 (D. Colo. Mar. 26, 2013); *Rivers v. Alderden*, No. 05-cv-00766-PSF-MEH, 2006 WL 686568, at *8 (D. Colo. Mar. 17, 2006). As to the former, I could find no precedent addressing whether such a claim can be pursued under the CGIA, although the Colorado Supreme Court *en banc*, in dicta, implied that it could. *Bd. of Cty. Comm'rs of Douglas Cty. v. Sundheim*, 926 P.2d 545, 553 n.14 (Colo. 1996). Furthermore, Colorado has waived immunity for those actions listed in Colo. Rev. Stat. § 116(1) *or* for willful and wanton conduct. *Hernandez v. City & Cty. of Denver*, 439 P.3d 57, 60 (Colo., App. 2018) ("Section 24-10-118(2)(a) thus provides a public employee immunity against tort liability except where (1) the act or omission causing injury was willful and wanton; or (2) the action is for injuries resulting from a circumstance identified in section 24-10-106(1)."). Thus, if properly pleaded, Plaintiff may maintain these causes of action against Defendant Iwasaki.

**III. Failure to Plead Willful and Wanton Conduct**

Defendants contend that as to the two tort claims, Plaintiff has failed to sufficiently plead willful and wanton conduct.

> Under Colorado law, "[a] plaintiff must plead the 'specific factual basis' of an allegation that an employee's act or omission was willful and wanton in order to avoid a dismissal for failure to state a claim. . . . [T]he plaintiff must 'do more than merely assert that [the defendant] made statements in reckless disregard of the truth'; a plaintiff must 'set forth facts to support a reasonable inference that [the defendant] recklessly disregarded the consequences of her actions.' . . . Thus, a plaintiff must plead specific facts to show or raise an inference that the defendant's conduct was 'specifically calculated to cause the alleged harm' or that defendant was 'aware her conduct would cause the alleged harm.'"

*McDonald v. Wise*, 769 F.3d 1202, 1217–18 (10th Cir. 2014). The elements of intentional infliction of emotional distress (or "outrageous conduct") are (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress. *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003). The standard for the tort of interference with prospective business advantage is that "a plaintiff must prove that a defendant intentionally and improperly interfered with the performance of a contract or another's prospective contractual relation." *Ervin v. Amoco Oil Co*., 885 P.2d 246, 253 (Colo. App. 1994), *aff'd in part, rev'd in part,* 908 P.2d 493 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996). Moreover, "[t]he issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another." *Id.*

Plaintiff's relevant allegations against Defendant Iwasaki include the following:

1. He "squandered a full season of Mr. Gitter's eligibility . . . during the 2018 season. FAC at ¶ 27
2. He "often made harassing statements and references to Mr. Gitter's family financial background." *Id.* at ¶ 36.
3. He used unfounded reasons in dismissing Plaintiff from the baseball team. *Id.* at ¶ 53.
4. He refused to provide Plaintiff with the precise reasons for the dismissal and denied Plaintiff the opportunity to explain his side of the story. *Id.* at ¶ 60.
5. He "threatened negative ramifications for Mr. Gitter's future career in baseball should Mr. Gitter question his dismissal from the Team." *Id.* at ¶ 67.

I find no basis whatsoever to conclude Plaintiff has pleaded that Defendant Iwasaki's conduct was specifically calculated to cause emotional distress, or that Defendant Iwasaki was aware his conduct would cause such distress. The FAC does not allege that, at any time, Defendant Iwasaki was emotional, intentionally abusive, or indecorous any manner. It also does not even

allege that Plaintiff suffered severe emotional distress. Plaintiff has not pleaded a claim for outrageous conduct.

As to the alleged interference with prospective business relations, I have no reservations in finding that the alleged interference under these circumstances was not improper. Considering "the relative significance of the factors involved," it is clear that a coach dismissing a player from a college baseball team for reasons relating to that coach's interpretation of the interests of the team "should be permitted without liability" for the tort of interference with prospective business relations. Nor does Plaintiff plead, under the willful and wanton standard, that Defendant Iwasaki's conduct was calculated to prevent Plaintiff from receiving a professional baseball contract. Indeed, Plaintiff specifically alleges that at the dismissal meeting with his coach, Defendant Iwasaki "stated he believed Mr. Gitter would play professional baseball." FAC ¶49. On the other hand, nowhere does Plaintiff allege that Defendant Iwasaki had the intent to prevent that possibility.

The two tort claims, Claims Five and Six, are dismissed under Rule 12(b)(6).

## IV. Qualified Immunity

The four remaining claims under 42 U.S.C. § 1983 may only be maintained against Defendant Iwasaki, because he is the only Defendant sued in an individual capacity. He asserts qualified immunity on the basis that Plaintiff asserts no violation of a clearly established constitutional right. I agree.

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly violative at the time of the official's actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmed v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability.

*Id.* Overcoming qualified immunity requires the plaintiff to show that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Smart v. City of Wichita*, 951 F.3d 1161, 1169 (10th Cir. 2020). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016).

The Supreme Court in *Pearson v. Callahan* emphasized that courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009); *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). The Court begins with determining whether Defendants' conduct violated a clearly established right.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howard*, 566 U.S. 658, 664 (2012)). "We have held that, for a right to be clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (quoting *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). Furthermore, "existing precedent must have placed the statutory or constitutional question beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In this vein, the Supreme Court has "repeatedly told [lower] courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citation omitted).

Plaintiff does not cite a single case finding a constitutional violation involving dismissal of an athlete. While a clearly established law "does not mean that there must be a published case involving identical facts[,]" *York v. City of Las Cruces*, 523 F.3d 1205, 1212 (10th Cir. 2008), "'the violative nature' of the particular conduct at issue" must be clearly established. *A.N. vy and through Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). That is, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, – U.S. –, 137 S.Ct. 548, 552 (2017). Plaintiff has not pointed to law that would satisfy this standard. Thus, I find Defendant Iwasaki entitled to qualified immunity.

## V. Constitutionally Protected Interest

The only remaining claim is to have Plaintiff's records show he was not involuntarily dismissed from the UNC baseball team against Defendants Iwasaki and Dunn in their official capacities. This would require Plaintiff to prove his procedural or substantive due process claims. The courts "engage in a two-step inquiry [in determining whether an individual's procedural-due-process rights were violated]: (1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006). Only a person "who has a protected property interest is entitled to some sort of hearing before the government acts to impair that interest." *Id.*

In *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564 (1972), the Supreme Court discussed at length the type of property interests that can form the foundation for a due process claim. "To have a property interest in a benefit, a person clearly must have more than an abstract

need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577.

The courts that have applied *Roth* to the right of an athlete to participate in either college or high school programs have uniformly found no protected interest. For example, in *Colorado Seminary (Univ. of Denver) v. Nat'l Collegiate Athletic Ass'n*, 570 F.2d 320, 321 (10th Cir. 1978), the court agreed with the district court decision holding that "the interest of the student athletes in participating in intercollegiate sports was not constitutionally protected." The court found that a college education is "a bundle of diverse situations," but even if "one stick in the bundle is removed [in that case, participating on a college athletic team], it does not necessarily mean that a constitutionally protected right of a student has thereby been violated." *Id.* Importantly, *Caldwell v. Univ. of New Mexico Bd. of Regents*, 510 F. Supp. 3d 982 (D.N.M. 2020) involved facts similar to those here. An athlete was removed from a collegiate team, with the plaintiff athlete alleging that the university, in violation of the student code of conduct, did not give the athlete a detailed explanation of the reasons for the discipline, and the athlete had no opportunity for an appeal. The court found no protected property interest.

Plaintiff's allegation that his dismissal damaged his opportunity for a professional career does not change the equation. The plaintiff made the same allegation in *Caldwell*, and the court noted that alleged damage to a professional career is too speculative a prospect to support a due process claim. *Id.* at 1040-43 (citing cases). *See Bowen v. Adidas Am., Inc.*, 541 F. Supp. 3d 670, 678 (D.S.C. 2021) ("The prevailing judicial approach does not recognize a constitutionally protected property interest in intercollegiate athletic competition and rejects arguments that such participation is necessary to develop the skills necessary for a future professional sports career. Likewise, persuasive authority has held 'hoped for careers in basketball' are too speculative to

comprise a constitutionally protected property right."). Furthermore, the nonrenewal of a scholarship (as opposed to the revocation of a scholarship during the school year) does not convert the case into one protected by the Due Process Clause. *E.g.*, *Doe v. Alvey*, No. 1:20-CV-410, 2021 WL 1519628, at *3, n.1 (S.D. Ohio Feb. 2, 2021), *report and recommendation adopted*, 2021 WL 1099593 (S.D. Ohio Mar. 23, 2021); *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019) ("[T]his Court can find no binding precedent to suggest . . . that there is a recognized property interest in the renewal of her year-to-year athletic scholarship . . . ."); *Moffit v. Long*, No. CV 01-1114 M/WWD, 2001 WL 37124656, at *3 (D.N.M. Dec. 19, 2001). Finally, in the absence of dissemination of defamatory statements, damage to "reputation alone, apart from some more tangible interest such as employment," is insufficient to invoke the Due Process Clause's protections. *Paul v. Davis*, 424 U.S. 693, 701 (1976) (citation omitted). These decisions require dismissal of any due process claim, whether procedural or substantive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 628 (10th Cir. 2014) ("Generally, to state either a procedural or substantive due-process claim, a plaintiff must first prove that the defendant's actions deprived the plaintiff of a protected property interest.").

**VI. <u>Leave to Amend</u>**

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ⁋ 15.10 & n. 2 (1983)). However, "[a]t least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013). Pursuant to Fed. R. Civ. P. 15(a), "[t]he grant or denial of an opportunity

to amend is within the discretion of the Court." *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018). As relevant here, it is within the court's discretion to deny leave to amend after a plaintiff has already been given "one opportunity to amend [its] complaint." *Bekkem v. Wilkie*, 915 F.3d 1258, 1275–76 (10th Cir. 2019). Here, Plaintiff is represented by counsel, and Plaintiff already amended his Complaint once, directly in response to a motion to dismiss. ECF 19. Plaintiff has not requested leave to amend again. If the Court were to grant leave now, it would be acting *sua sponte*. The Court will not do so. *Id.* ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give [the plaintiff]—who was represented by counsel—an opportunity to file an amended complaint."); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required to sua sponte grant leave to amend prior to making its decision [to dismiss]."). Regardless, based on the Court's analysis in this Order, the Court finds that any future amendment would be futile. Accordingly, when the Court dismisses Plaintiff's claims pursuant to Rule 12(b)(6), it does so with prejudice.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss [filed February 16, 2022; ECF 26] is **granted**. Pursuant to Fed. R. Civ. P. 12(b)(1), all claims against Defendant UNC and all claims except the injunctive relief claim against Defendants Iwasaki and Dunn in their official capacities are dismissed without prejudice. Pursuant to Fed. R. Civ. P. 12(b)(6), the injunctive relief claim as well as claims for tortious interference (Claim 5) and intentional infliction of emotional distress (Claim 6) are dismissed with prejudice. Finally, the constitutional violations under 42 U.S.C. § 1983 against Defendant Iwasaki (Claims 1–4) are dismissed with prejudice, and he is entitled to

qualified immunity. As no claims remain, the Court directs the Clerk of the Court to close this case.

Dated at Denver, Colorado, this 8th day of April, 2022.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge